No. 19,576.

TOBY ATENCIO *v.* THE PEOPLE OF THE STATE OF COLORADO.

(364 P. [2d] 575)

Decided August 28, 1961. Rehearing denied September 18, 1961.

Messrs. BARTLETT & OUREN, Mr. FRANK L. SHAW, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. ROBERT G. PIERCE, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

TOBY ATENCIO, hereinafter referred to as defendant, is before this court on writ of error to review a judgment entered by the trial court upon a verdict of a jury finding the defendant guilty of murder in the second degree. It was alleged in the information that the defendant " * * * on or about the 11th day of February, A.D. 1960 * * * did then and there feloniously, wilfully,

and of his own malice aforethought, kill and murder one Rita Marie Delano; * * * "

In substance, the grounds relied on by counsel for defendant for reversal of the judgment are as follows:

1. Errors committed in the examination of the prospective jurors; in that (a) the court allowed the district attorney to qualify the jury to return the death penalty, although there was no evidence upon which such a penalty could be imposed; and (b) the court sustained challenges for cause when jurors had not been fully questioned as to whether they would put aside their scruples and return the death penalty if a proper case were presented to justify that action.

2. That the trial court erred in admitting photographs in evidence.

3. That the trial court erred in refusing to give instructions tendered by defendant concerning his "theory of the case," namely accidental death, and voluntary suicide.

4. That the trial court erred in giving an instruction on involuntary manslaughter.

5. That there should have been a directed verdict of not guilty for the reason that the evidence was insufficient in law to support the verdict.

On voir dire examination of the jury, the district attorney inquired as to whether or not each juror would return a verdict calling for the death penalty if a proper case were presented. Defense attorneys objected to such questions and asked that the district attorney be required to state whether or not the death penalty would be sought. The court overruled defendant's objections to these questions and each juror thereafter was questioned in regard to returning the death penalty.

The death penalty was not actually sought in this case, no doubt because of the statutory provision which prohibits that penalty where a conviction is based entirely on circumstantial evidence. Such was the case here, be-

cause, although the defendant took the stand in his own defense, he did not admit the shooting, nor were any other witnesses to the shooting itself, called to testify.

It is contended that it was prejudicial to defendant not to require the district attorney to state whether direct evidence justifying the death penalty would be presented. Defendant contends that failing to require the district attorney to take a definite position in regard to the death penalty deprived him of the opportunity to select jurymen from among the seventeen persons who were excused because of their predetermined attitudes against returning a death penalty. In short, he contends the district attorney should not be allowed to inquire in this manner unless he has evidence which he feels might reasonably warrant the return of the death penalty.

It is true the district attorney, in examining his case prior to presentation in the trial court, might well have concluded that he did not have direct evidence sufficient to warrant the death penalty. However, the charge was first degree murder and it was conceivable that such would be the verdict of the jury. It was entirely possible that an eye witness might be found after the trial had started, or that upon direct or cross-examination the defendant might have incriminated himself to such an extent that the death penalty could be sought. At the time these questions were asked no one could tell exactly what the evidence would show. See *State v. Milosovich,* 42 Nev. 263, 175 Pac. 139. The charge here grew out of the death of a young girl by violent means under sordid circumstances. Had the defendant's guilt been proved by direct evidence, the district attorney would have been guilty of neglect had he not sought the death penalty. Considering the unpredictability of trials and the circumstances surrounding this case, the district attorney did not act improperly in qualifying the jury to return the death penalty. Under such circumstances the district attorney should be given considerable

latitude in the scope of his voir dire of the jury. The court committed no error on this point.

In questioning the first three prospective jurors, the district attorney asked each if he could conscientiously impose the death penalty in a proper case. Each answered to the effect that he had objections to the death penalty which would not permit him to return such a verdict. They were excused on a challenge for cause by the district attorney. Counsel for defendant made no objection to the court's action in excusing these jurors at that time. It was only midway through the examination of the next prospective juror that motion for a mistrial was made on the ground that the three jurors had been excused improperly. This motion was denied. Thereafter, as prospective jurors indicated they were opposed to the death penalty, they were questioned as to whether they could overcome their objections to that penalty, and return a verdict inflicting it, if the evidence disclosed a proper case for its application.

Stratton v. People, 5 Colo. 276, relied on by defendant, is distinguishable from the instant case. Here it was not shown that the three jurors excused would have been able to disregard their objections to the death penalty and return it in a proper case and defendant made no objections when the jurors were excused. A defendant must make timely objection to any alleged error in order that the trial court may be afforded an opportunity to correct it. Petersen v. People, 133 Colo. 516, 297 P. (2d) 529. Had objection been made before the jurors were actually excused, further questioning could well have been conducted, to make clear the attitude of such jurors as to whether they could or could not set aside their scruples. As the record stands we are left to speculate upon the replies the three jurors might have made to additional questions. Had they responded that they could not return the death penalty under any circumstances, they would properly have been subject to

challenge for cause. Such might have been the case. No error was committed in this connection.

■ There is no merit to the argument that photographs were improperly admitted in evidence. The two photographs objected to were pictures of the deceased in the front seat of the defendant's car. They show the deceased in the position in which the defendant placed her following the shooting, and reveal the scene inside the defendant's automobile when the police officers arrived at the scene. The instant case is similar to *Martinez v. People,* 124 Colo. 170, 235 P. (2d) 810, and is clearly distinguishable on the facts from the situation presented in *Archina v. People,* 135 Colo. 8, 307 P. (2d) 1083.

Defendant tendered two instructions which were refused by the court, the essence of which was that the jury should acquit the defendant if it found the death of the deceased was due to accident or voluntary suicide.

■ The court did instruct the jury that in order to convict it must find that the allegations of the information were proved beyond a reasonable doubt, and that if they failed to find such allegations so proved, they were to find the defendant not guilty. In Instruction No. 4 the court defined murder and informed the jury that, if they found beyond a reasonable doubt that the defendant had killed the deceased, they were to convict, but otherwise they were to find the defendant not guilty. This was amplified in Instruction No. 9 where the court said that in order to convict of first degree murder the jury must be satisfied from the evidence beyond a reasonable doubt not only that the defendant unlawfully shot and killed the deceased, but that he had formed in his mind a deliberate and premeditated intention to kill, and that he wilfully fired the fatal shot for the purpose of effecting that intention. That all instructions are to be considered together is basic law requiring no citation. By the instructions mentioned above, the jury was fully informed that it must find not only that the defendant had fired

the shot himself, but that he did so with the wilful and felonious intent required by the statute. It cannot reasonably be said that the jury could have been confused by the failure to mention specifically the possibility of accident or suicide.

The defendant did not contend that *he* accidentally shot the deceased. He denied firing the shot that killed her, and testified that he fell asleep on top of her following an act of sexual intercourse, and was awakened by a shot from his revolver which the deceased had fired into her own breast. His contention was that she either accidentally or intentionally shot herself. This being the case, the instructions given, which repeatedly informed the jury that before a verdict of guilt could be returned it must find beyond a reasonable doubt that *he* killed the deceased, fully cover his theory.

There is no merit to the contention of counsel for defendant that the trial court erred in instructing the jury upon the offense of involuntary manslaughter. *Baker v. People*, 72 Colo. 68, 209 Pac. 791; *Turley v. People*, 73 Colo. 518, 216 Pac. 536.

█ It is argued that the evidence presented upon the trial was insufficient as a matter of law to sustain the verdict. The evidence against the defendant is entirely circumstantial. We have carefully considered the entire record and conclude that the circumstances shown by the evidence were such that the jury could well have been satisfied beyond a reasonable doubt that the defendant himself fired the shot resulting in the death of deceased.

The verdict, being amply supported by competent circumstantial evidence, no good purpose would be served in lengthening this opinion by setting forth the sordid story of illicit relations between the deceased (a seventeen-year-old girl) and the defendant (a 32-year-old married man) which finally culminated in the death of the girl. The jury rejected the effort of defend-

ant to rebut the circumstances pointing to his guilt, and in so doing acted within its exclusive province to determine the facts.

The judgment is accordingly affirmed.

MR. JUSTICE DAY did not participate.