## No. 21201.

LUIS JOSE MONGE v. THE PEOPLE OF THE STATE
OF COLORADO.
(406 P.2d 674)

Decided September 27, 1965.    Rehearing denied November 1, 1965.

Richard M. Schmidt, Jr., William G. Berge, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, John E. Bush, Assistant, John P. Moore, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

We refer to plaintiff in error as defendant.

In an information filed in the district court of the City and County of Denver, it was alleged that:

"* * * on the Twenty-ninth day of June, A.D. 1963 at the City and County of Denver, and State of Colorado, Luis Monge did feloniously, wilfully and of his premeditated malice aforethought, kill and murder one Leonarda Monge; contrary to the form of statute in such case made and provided, and against the peace and dignity of the people of the State of Colorado."

On July 9, 1963, the cause was continued for entry of a plea and setting of a date for trial. Counsel for defendant was appointed on July 10, 1963. Defendant was arraigned on July 12, 1963, and by his attorneys he entered a plea of not guilty and not guilty by reason of insanity. The court then ordered the defendant committed to the Colorado State Hospital at Pueblo, Colorado, for a period of not to exceed thirty days for obser-

vation and report. The cause was then continued to August 13, 1963.

The report made by the examining doctors advised the court that defendant was legally sane. At the request of defendant, Dr. Robert Cohen was appointed to examine the defendant. He made his examination and also reported that defendant was sane.

On October 23, 1963, defendant, with leave of court, withdrew his pleas of not guilty and not guilty by reason of insanity. He then entered a plea of guilty to murder in the second degree, which the trial court refused to accept.

Whereupon, defendant was re-arraigned and entered a guilty plea to murder of the first degree. The court fully cautioned the defendant who persisted in the guilty plea. It was then reduced to a written statement and was signed by defendant in the presence of the court.

The court proceeded to trial to a jury on November 13, 1963, for the purpose of fixing the penalty either at life imprisonment or death as provided by statute. The evidence was presented, the jury duly instructed, and two forms of verdict were submitted to the jury by the court — one fixing the penalty at life imprisonment and the other at death.

On November 15, 1963, the jury returned a verdict as follows:

"We, THE JURY, hereby set the penalty of the defendant, Luis Jose Monge, at death."

On December 5, 1963, a Motion for New Trial was filed, as follows:

"COMES NOW THE Defendant by his attorneys Richard M. Schmidt, Jr. and William G. Berge, and moves this Court for a new trial in the above captioned matter and as grounds therefore respectfully shows as follows:

"1. Defendant had heretofore entered a plea of guilty to murder of the first degree. The Court committed

error by admitting into evidence, over the objections of Defendant, People's Exhibits A, B, C, D, and E.

"Defendant had by his plea of guilty and by stipulation read into the record of his case, admitted the murder of Leonarda Monge, which was the offense charged in the above captioned matter, together with the murder of Alan, Vincent and Teresa Monge.

"That the admission of said Exhibits, the same being photographs, an iron bar and a stiletto, served only to inflame the jury, to arouse the passions of the jurors, and to incite them to set the penalty at death.

"The introduction of said Exhibits as above stated were of no probative value in the case and were prejudicial to the rights of the Defendant in that they tended to cause said jurors to be passionately prejudicial against the Defendant and to be unable to consider the matter objectively.

"The introduction of said Exhibits, which included the display of bloody clothing, served only to arouse the prejudices and passions of the jury so as to prevent them from viewing the evidence and statements as presented by both sides objectively and calmly; prevented the calm and careful deliberation of the jury in considering the penalty of life imprisonment.

"2. The decision reached by the jury was contrary to both the law and the facts as presented to them in this case."

The above motion was argued on December 18, 1963, and denied on that date. The defendant was then sentenced to death.

The defendant seeks reversal on three grounds all of which are based upon the admission over objection of Exhibits A, B, C, D and E for the reasons:

1. That the exhibits are not relevant because defendant had already admitted his guilt, and pictures of bloody scenes and admission in evidence of deadly weapons are without probative value.

2. The Exhibits are not relevant because they prove

commission of crimes other than the one charged, and

3. Even if relevant, these exhibits are *too gory* to be admitted into evidence, and that the sole purpose that the District Attorney had in offering the exhibits was to incite the jurors to vengeance and hatred.

It is contended that precedent will be set in this case because, heretofore, the law permitted only a plea of guilty to murder in which event the jury determined the degree and the sentence to be imposed; whereas, under the law as amended in 1959, the accused may enter a guilty plea to *first degree murder* with the jury determining only the sentence to be imposed. The contention is advanced that because the jury no longer determines the degree of murder, much of the evidence heretofore relevant in cases where there has been a plea of guilty is no longer relevant. It is argued that since first degree murder is admitted by the plea of guilty, the introduction into evidence of photographs and deadly weapons can have no probative value but merely an inflammatory effect upon the jury.

In the instant case defendant had confessed to a sequence of killings. The members of his own family including Leonarda Monge, his wife, a son Alan, a son Vincent, and his 11 month old daughter Teresa were all slain as part of a scheme to wipe out the family. Suffice it to say that the voluntary admissions of the defendant show plainly that all four were slain in a planned effort to prevent exposure of sex crimes committed by defendant with his own children.

Exhibit A is a picture of a bath tub scene where defendant had placed bloody bedding; Exhibit B was a photo of the cot and bassinet wherein defendant's 11 month old daughter was sleeping when he stabbed her with a stiletto; Exhibit C was a photo of the four victims of the killer as he had placed them side by side in a bed. Exhibit D was a poker or iron bar with which defendant slew his wife and one of his sons. Exhibit E was the stiletto which he used to kill the 11 month old

baby — all as a part of the same plan and scheme to dispose of the whole family in order to prevent exposure of sex crimes committed by defendant.

The statute C.R.S. 1963, 40-2-3, under which defendant pleaded guilty to first degree murder provides *inter alia:*

"* * * If any person indicted for murder shall plead guilty to murder in the first degree, the court shall thereupon impanel a jury as in other cases, to which shall be submitted, as the sole issue in the case, the punishment to be imposed. The jury shall retire as in all other criminal cases and shall return a sentence accordingly at imprisonment for life, or penalty at death, and the court shall thereupon give sentence accordingly; * * *"

■■ The statute thus gives a discretion to the jury to determine whether the penalty should be life imprisonment or death; hence, any and all evidence relating to the series of events of which the act charged in the information is a part was proper for the consideration of the jury. Anything admissible in a trial in which the accused enters a plea of not guilty, is proper for the consideration of the jury which is called upon to fix a penalty if the evidence bears upon circumstances showing aggravation or in mitigation of the offense.

*Archina v. People,* 135 Colo. 8, 307 P.2d 1083, cited by the defendant, is clearly not in point. The pictures involved in that case which were held to be improperly admitted did not show the scene as produced by the accused. *St. Luke's Hospital v. Long,* 125 Colo. 25, 240 P.2d 917, is also clearly not in point.

It is true that this court has never had before it any question directly involving C.R.S. 1963, 40-2-3, and the procedure to be followed or the kind of evidence which is admissible where there has been a guilty plea to first degree murder under that statute. It does not follow, however, that within the scope of our past decisions

there are no guide lines which govern our consideration of the questions which are raised.

The same question now presented has arisen where a killing occurs in connection with an armed robbery. In such a case, the jury has no discretion as to the degree of murder involved, for the reason that the crime is defined by statute as first degree murder.

In *Abshier v. People,* 87 Colo. 507, 289 Pac. 1081, defendant pleaded guilty to murder. The evidence revealed that the slaying occurred during a bank robbery in which defendant was a participant. In that case this Court said:

"Evidence of other crimes committed in Kansas was admissible. Such other offenses were indivisibly connected with, incidental to, and in furtherance of the plans of defendant and his confederates to rob the bank at Lamar, flee, conceal the evidence of their robbery and murder of Parrish, and escape pursuit. These acts were all a part of a single transaction, an account of which could not be well related without the whole story appearing. As such, they were admissible. * * *

\* \* \*

"We are limiting ourselves in the rules here stated to their application to present facts. Counsel for defendant give only a part of the reasons for the rule of admission of other crimes, some of such reasons being for the purpose of showing malice, motive and intent, and argue that, these things having been admitted, a fortiori, evidence thereof was inadmissible. But the evidence is still under the rule that it was a part of the same transaction.

"Such evidence, having otherwise satisfied the test as to its admissibility, was also relevant to show an aggravated crime, or in mitigation, if there had been any such circumstances. When the law gives the court a discretion as to the punishment, in pronouncing sentence it will look into the evidence proper to influence a judicious magistrate to make it heavier or lighter; or

such evidence may be delivered to the jury at the trial if the assessment of the penalty is vested in the jury."

In *Reppin v. People,* 95 Colo. 192, 34 P.2d 71, this Court, at page 210, said the following in a "felony murder" case:

"The offenses committed in El Paso county were of the same character as the crime charged; they were sufficiently connected in point of time to meet the requirements of the law; and the same motive may reasonably be imputed to them all. The evidence thereof bore upon the intent with which the defendant shot Regan and the motive that prompted the act, and was admissible, but only for the purpose of determining such intent and motive. * * * Such evidence was not rendered inadmissible by the fact that the trial was upon a plea of guilty instead of upon a plea of not guilty. It cannot successfully be contended that as a plea of guilty raises no issue of intent, evidence of other offenses is not admissible to show intent. If such were the case, evidence of the homicide would not be admissible upon a plea of guilty, because such a plea admits the homicide. That, of course, is not the law. When such evidence would be admissible where the plea is not guilty, it is admissible where a defendant pleads guilty and evidence is submitted to a jury under section 6665, *supra.*"

When the duty devolves upon the jury to determine the penalty, they must and should be possessed of all the facts and circumstances surrounding the commission of the crime with which the defendant is charged, that they may intelligently exercise the discretion which is vested in them in fixing the penalty. See *Sukle v. People,* 107 Colo. 269, 111 P.2d 233, and *Leopold v. People,* 105 Colo. 147, 95 P.2d 811.

All facts inseparably connected to the chain of events of which the act charged in the information is a part are admissible even though the full story shows the commission of other crimes. *Wooley v. People,*

232

148 Colo. 392, 367 P.2d 903; *Ciccarelli v. People,* 147 Colo. 413, 364 P.2d 368; *Armijo v. People,* 134 Colo. 344, 304 P.2d 633. We have repeatedly held that photographs are admissible in evidence if they depict facts which are relevant, and they are not rendered inadmissible because they reveal shocking details of the crime. *People v. Spinuzzi,* 149 Colo. 391, 369 P.2d 427; *Atencio v. People,* 147 Colo. 566, 364 P.2d 575; *Martinez v. People,* 124 Colo. 170, 235 P.2d 810. Photographs which depict the crime scenes as they were created by the defendant are properly admitted in evidence. *Mills v. People,* 146 Colo. 457, 362 P.2d 152; *Skeels v. People,* 145 Colo. 281, 358 P.2d 605.

We find no prejudicial error in the record.

The judgment is affirmed.

MR. JUSTICE SUTTON not participating.