**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Antonio HARRIS, Defendant-Appellant.**

**Nos. 84CA1445, 84CA1461.**

Colorado Court of Appeals, Div. I.

June 12, 1986.

Rehearing Denied July 17, 1986.

Certiorari Granted (People) Dec. 2, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Peter Schild, Boulder, for defendant-appellant.

PIERCE, Judge.

Defendant, Antonio Harris, appeals from the judgment of conviction entered on jury verdicts finding him guilty of first degree sexual assault and conspiracy to commit the sexual assault. Defendant also appeals the sentence imposed. We reverse and remand for new trial.

## I.

Defendant's primary contention is that his Fourth Amendment rights were violated when a detective proceeded with a custodial interrogation during a limited detention of defendant under Crim.P. 41.1. He argues that the trial court erred in not suppressing the statements which he made during that custodial interrogation. We agree.

The record here establishes that after defendant was served with the Crim.P. 41.1 court order, he was taken in a police car to a hospital for extraction of certain body samples, and then to an armory building for a lineup. The detective who served the order and transported defendant testified that defendant was not free to leave after being served with the Crim.P. 41.1 order.

Enroute to the hospital, the detective advised defendant of his *Miranda* rights which defendant waived. The detective then proceeded to question defendant regarding his whereabouts and activities on the evening of the sexual assault. This questioning continued enroute to the hospital, at the hospital, and on the way to the armory building. The detective testified that he had wanted to interview defendant, that the questioning "was part of the plan," that he was laying the ground work for eventually asking defendant if he had sexually assaulted the victim.

██ Detention pursuant to Crim.P. 41.1 is an intrusion within the scope of the search and seizure clause of the Fourth Amendment and its Colorado counterpart, but such an intrusion, within the scope of the rule, does not violate either the Fourth Amendment or Colo. Const. art. II, § 7. *People v. Madson,* 638 P.2d 18 (Colo.1981). The constitutional propriety of a Crim.P. 41.1 intrusion is based on a recognition that the intrusion is a limited one, and that the Crim.P. 41.1 order imposes conditions of execution calculated to safeguard adequately the constitutional interests of the person affected. *People v. Madson, supra.* Accordingly, the rule is limited to "non-testimonial identification evidence only, and does not authorize the acquisition

of testimonial communications protected by the privilege against self-incrimination." *People v. Madson, supra; see Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Crim.P. 41.1(d).

██ Crim.P. 41.1 specifically provides for non-testimonial identification procedures on less than probable cause. The affidavit required in support of issuance of a Crim.P. 41.1 order must establish probable cause to believe that a crime has been committed, but need specify only reasonable grounds to suspect that the person described in the affidavit committed the offense. Crim.P. 41.1(c); *People v. Madson, supra.* Once there is probable cause for arrest, then Crim.P. 41.1 is inapplicable. *People v. Peoples,* 200 Colo. 509, 616 P.2d 131 (1980); *People v. Reynolds,* 38 Colo. App. 258, 559 P.2d 714 (1976).

██ Although defendant's detention may not have been initiated for the sole purpose of custodial interrogation, the impermissible expansion of the scope of the Crim.P. 41.1 order so severely intruded upon defendant's interests protected by the Fourth Amendment as necessarily to trigger the safeguards against an illegal arrest. *See Dunaway v. New York, supra.*

██ The preplanned interrogation of defendant here, who was in custody pursuant to a Crim.P. 41.1 order, derogates the constitutional safeguards incorporated within Crim.P. 41.1, and it violates the limited purposes and limited intrusiveness of a Crim.P. 41.1 procedure. Such an expansion of the Crim.P. 41.1 procedure is impermissible, and constitutionally infirm. It violates the affected person's Fourth Amendment rights against illegal search and seizure as well as violating Colo. Const. art. 2, § 7. *Cf. Dunaway v. New York, supra; People v. Madson, supra.*

██ Contrary to the People's argument, the *Miranda* warnings by themselves are not sufficient to dissipate the taint of a Fourth Amendment violation even though the statements were otherwise voluntary. *Dunaway v. New York, supra;*

*People v. Madson, supra.* Satisfying the Fifth Amendment protections is only the "threshold" condition of the Fourth Amendment analysis. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *McCall v. People,* 623 P.2d 397 (Colo.1981).

In determining whether the taint of an illegality has been dissipated, we must consider the temporal proximity of the illegality and defendant's statements, the presence of intervening circumstances, and the purpose and flagrancy of any official misconduct. *See McCall v. People, supra.*

First, the temporal proximity between the impermissible expansion of Crim.P. 41.1 and defendant's statements was immediate. Defendant was in exclusive custody, under the continuous company of the detective while he was questioned in the car, at the hospital, and again in the car on the way to the armory. Thus, there was no time for dissipation of the illegality. Second, there were no intervening circumstances here. No incriminating, or other, results from the non-testimonial identification were made available to the detective at any time during his questioning of the defendant. Finally, the admitted purpose was to obtain a confession from defendant. These circumstances show the flagrancy of the detective's misconduct. We, therefore, conclude that the statements from defendant were obtained by exploiting the illegality of the expanded Crim.P. 41.1 procedure and that illegality was not dissipated. *Cf. Dunaway v. New York, supra; People v. Madson, supra.* Hence, defendant's Fourth Amendment rights were violated, and the failure to suppress the evidence gained by that violation constitutes reversible error.

We next address issues which may arise upon retrial.

## II.

Among the issues which may arise on retrial, defendant argues that the trial court improperly limited cross-examination of a rebuttal witness. While we agree with the People that defendant has failed to show that the limitation was manifestly prejudicial, upon retrial care should be taken not to limit unnecessarily cross-examination on matters affecting the credibility of a witness. Here, the critical issue was identification of the defendant and identification of his alleged accomplice. A rebuttal witness here testified with respect to ownership of a certain jacket by defendant's cousin and alleged accomplice. On cross-examination, defense counsel apparently attempted to impeach the witness by asking him whether he had told someone else that defendant's cousin and brother sometimes traded clothes. This question was disallowed based on an objection that it was beyond the scope of direct examination. Upon retrial, such impeachment questioning should be permitted. CRE 611(b).

Defendant, who at trial had invoked the principle of spousal immunity, next complains regarding prosecutorial comments during closing argument on his failure to call his wife to the stand. Although the situation here differs from *People v. Medina,* 190 Colo. 225, 545 P.2d 702, 190 Colo. 225 (1976), because there defendant had asserted that his wife provided an alibi, we conclude that the prosecutor's comments here went beyond permissible comment on a lack of evidence.

In attacking defendant's explanation regarding his reason for being in the vicinity of the crime, the prosecutor here stated that: "[Defendant jogged] because his wife gets mad when he drinks. That seems easy enough to take care of. The wife could tell you 'I get mad when he drinks, and that night he had been drinking and so he went out running, and when he left the house he had on jogging pants.' No wife ever testified." Upon retrial, the prosecution should refrain from such unnecessary and improper comments.

In view of our disposition of this case, we do not address defendant's challenges to his sentences. Defendant's remaining contentions lack merit.

The judgment is reversed and the cause is remanded for a new trial.

METZGER, J., concurs.

STERNBERG, J., dissents.

STERNBERG, Judge, dissenting.

## I.

If one who has been detained for the taking of body samples under Crim.P. 41.1 is given a *Miranda* warning and thereafter makes incriminating statements, may those statements be used as evidence against him? The majority opinion says no, apparently because the police officer intended to question the defendant when he was in custody for the Crim.P. 41.1 proceeding. I believe the statements to be admissible and therefore respectfully dissent.

In my view, the fact that the police officer may have intended to and did question defendant while in his company for the Crim.P. 41.1 proceeding is not relevant to determining whether the exclusionary rule should be invoked. Instead, the inquiry should be directed at whether there was a proper basis for detaining the defendant under Crim.P. 41.1, and if so, whether the customary Fifth Amendment standards concerning the *Miranda* warning and the voluntariness of the statements were met before such questioning occurred.

Here, there was probable cause to believe an offense had been committed, there were reasonable grounds to conclude that defendant had committed the offense, and the results of the body fluid tests in this sexual assault case would be of material aid in determining whether the person detained had been involved. Thus, there was a proper basis for detaining defendant. Crim.P. 41.1(c). There is no question but that a proper *Miranda* warning was given and that no irregularities occurred in the questioning thereafter. Therefore, there being neither a Fourth or Fifth Amendment violation, the defendant's statements properly were admitted.

I view the majority opinion as holding that if one is being held for tests to be conducted under Crim.P. 41.1, he then enjoys a blanket shield from questioning, and even a voluntary statement made after a *Miranda* warning may not be used against him. In my view, neither *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) nor *People v. Madson*, 638 P.2d 18 (Colo.1981) requires such a result. Nor do I perceive any policy reason for according such special status to the post-*Miranda* voluntary statement of a person lawfully in custody.

## II.

I also disagree with the conclusion of the majority that the trial court improperly limited defendant's cross-examination of the rebuttal witness. As no prejudice was demonstrated, I perceive no error in the limitation imposed. And, in my view, the prosecutor's comments that "no wife ever testified" does not constitute reversible error. It cannot be said that the comment shifted the burden of proof to the defendant. The comment was based on an inference drawn from the evidence. It should not lead to reversal. *See People v. Todd*, 189 Colo. 117, 538 P.2d 433 (1975). *See also People v. Medina*, 190 Colo. 225, 545 P.2d 702 (1976).

I would affirm the conviction.